In the middle of last year, Mr. Ross was sentenced in the District Court under a scheme that required a five-year mandatory minimum and guidelines that recommended a sentence between 151 and 188 months. In a different world, however, had he committed the same crime in the same way and been the same person with the same criminal history, and the only difference was how the prosecution charged his act, he would have faced sentencing with a minimum as low as probation and a guideline range that recommended a sentence 54 to 67 months lower, with no change to the offense or the offender. That arbitrary distinction, it is our contention, is unconstitutional. And to get to that conclusion, I think I need to cover two main topics today. One is the factual premises that underlie our argument, and by that I mean the factual overlap between the acts of possessing and receiving. And second, the functional differences in the outcomes depending on which charge the conviction falls under. And then the second topic I need to get to is the legal basis for invalidating this scheme. So, beginning with the first, the factual overlap between the acts of possessing and receiving. Just as a matter of plain meaning, if you receive an item, you possess it. There is no difference there. The Ninth Circuit agreed, and Olander and a number of other courts, including Judge Ellison in the district court here, said these overlap. So, when you say overlap, is that a concession? Do you mean to concede that there is not a complete identity of conduct shared between the two offenses? There is an overlap, to be sure, but they are not identical. I would say that the government points out one way that they may be different. It's hypothetical is that a person that produces an item can possess it without receiving it. You don't assert double jeopardy. That's correct. This is not a double jeopardy challenge. That's not hypothetical. Yes. We see cases like that all the time, sadly. And I represent those defendants in the district court quite often. But what I will note is it's a hypothetical in this sense. The government has not presented any real-world example of such a producer where the United States chose to prosecute under just possession, where the possession statute and guideline-based offense level would be determinative in any way. In fact, a production offender has a different statute with a 15 to 30-year statutory range and a different guideline with far harsher penalties. Well, the rationale, as I understand it, is it's far worse, you know, the old expression is better to give than to receive. It's far worse to receive than to simply possess because it's generating or helping generate this terrible industry. And I would say that because of the nature of the two acts, if a person possesses, they did at one point either receive and have that same harm, or they produced, and I would submit that creating these terrible images and videos is a worse harm than the act of receiving. Well, not if it doesn't leave the possession of that producer. And I would submit because of the nature of what's being recorded, it's child abuse. It's traumatizing a child. I think this court and numerous other courts would say that just the act of filming it and causing that harm ... That doesn't mean that two offenses aren't committed and that they aren't separately punishable. Right. And this is not a double jeopardy challenge. I agree. We're not saying they couldn't both be. He could be charged and convicted of both. That's right. But in that situation, the possession statute and the guideline would have no effect. It would be the higher punishment range for production and the guideline for production that would take effect. And so the government hasn't posited an example or presented a realistic probability of how we get to possession mattering in such a scenario. Do you think the knowledge ... What's the knowledge requirement to prove receipt? So the knowledge, and I'll flip just briefly if you'll allow to the statute, is knowingly that it must be knowingly received. Okay. Now, it seems plausible to me that someone could hand another person a flash drive that a person doesn't realize, doesn't know that he may be receiving child pornography, then realizes it later and keeps it. Now, wouldn't that satisfy possession but not receipt? I think that it might arguably prove knowing possession but not knowing receipt. I think both acts are there, even if it was unknowing. Also, a jury in a production situation might conclude that the defendant did not produce the child pornography, but certainly they could convict him of the possession. And so there would be a reason to charge both and put it to the fact finder. Right. And it could be both charged. But in that scenario, if we're going to sentencing on possession, particularly under the guidelines where it's only a preponderance standard to cross-reference to production, then we have a determinative court finding that there wasn't production. But, you know, you're saying there's no reason to charge both, and I think there is. Because you might not be able to meet your proof where you are alleging both creation and possession. The jury might acquit on creation but convict on possession. So there are reasons to charge, and then you would be sentenced to the—just for the possession, not for the creation. Or receipt. You didn't knowingly receive, but you nevertheless possessed. Understood. And so there's reasons to charge both crimes. And I apologize if I spoke poorly. I don't mean no reason to charge, no reason to sentence under the possession scheme. There isn't a scenario where we get there with a producer. That was what I intended to convey, and I apologize if I said that poorly. I will note, though, that in the government's hypothetical and those posed by your honors, these are not Mr. Ross. And they're not the mine run case that all these courts have dealt with. Where the act of downloading, which is the mine run case in these crimes, it is both acts at the same time. In fact, for Mr. Ross, the record shows— Downloading to use of a computer and all of that's a different crime. And I would submit that the act is the same in both. And if we are tying severity of punishment, the theory underlying punishment is we're looking at the offense itself, the act. Well, you can get child pornography through means other than downloading, and you could have both in your possession. You could possess some that you got from photos from your next door neighbor, and you could download and have both. And in that instance, I would say both are received, so you still have acts of receiving and possessing. Even if you get it from your neighbor, you have received. But you've also downloaded. I'm just saying there are various ways, and I just—I have a hard time—what's your bottom line point here that—constitutionally, what is your point? Yes, Your Honor. Jumping to the constitutional infirmities, I think there's two. The first is the arbitrary nature of this scheme, and in the language of the Void for Vagueness Doctrine, it's the second prong, that these laws, this law is so standardless that it invites an arbitrary enforcement. How do you get around Batchelder? Isn't that a big obstacle? I don't think it is. I see the natural analogy that can be drawn, but I think it's different for a number of reasons. The first is, to the arbitrariness point, that case was not briefed, argued, or decided on arbitrariness grounds. It had numerous arguments, but under due process, Batchelder is deciding notice. The argument was, I didn't know which statute would apply. That is not the prong. Explicitly in the district court, Mr. Ross said, we are not challenging notice. So Batchelder didn't reach an arbitrary enforcement question. In fact, Kohler, which dealt with and revived the arbitrariness doctrine, came four years later. That's the first distinction, is it didn't question, is there an arbitrary enforcement? Second, is that that dealt with only increasing a maximum punishment. It did not deal with an increase to a statutory minimum, which years later, we know through Booker and Allain, that increasing mandatory minimums has a constitutional effect, and it did not deal with sentencing guidelines, as they were not yet in effect. I mean, at the end of Batchelder, the court is talking about the discretion a prosecutor exercises when deciding whether to charge. And that sounds like an arbitrariness point, isn't it? I think that read in context, we have to look to a preceding sentence in Batchelder that also says this does not empower the government to predetermine ultimate criminal sanctions. It rather merely enables the sentencing judge to impose a longer prison sentence. But with the court's point, I would say that prosecutorial discretion is different in this scenario for a couple of reasons. Our assertion is that this scheme is so standardless that it does not provide clear guidance to a prosecutor. In the typical context of prosecutorial discretion, Congress has rightfully prescribed certain crimes and said for more culpable conduct, more severe punishments attach. And so we can look at an act, say murder, and Congress will set a maximum punishment, often life or death. Within that are many lower levels that the government could charge. So if we talk about discretion in most cases, it is government discretion to charge less serious acts within the conduct. They're essentially going down from the maximum Congress has established. But it's tethered to the real world conduct. Versus here where our position is that the acts of receiving and possession don't do that, especially in Mr. Ross's case where it's the same act for both of the offenses. And I would also note that with the text of the Due Process Clause, it's a violation of the Constitution if we're arbitrarily depriving a person of liberty. In the typical prosecutorial discretion, there may be arbitrary mercy filing less serious charges, but that's no complaint. Well, along the line of what you just said about since both of these are the identical offenses, I think you used that term, correct me, the first count had to do with receipt on the 19th of July, 2016, and the second on possession on the 19th of August, 2016, unless I just can't read the indictment. Were they two separate dates? You're quite correct. My position is not that these two counts of this indictment are the same. But I was curious as to the different dates. And I didn't see anything explaining it in the factual statement for his plea. So what in the record might indicate why the two different dates? I don't know that the record speaks very clearly to it. If the Court wants me to answer out of the record, I'm the one to handle it. No, I don't want you to. But from the record, the . . . Maybe the government can do it from the record. All right, thank you. And at the rearrangement, there's certain facts, but I agree it is left relatively vague. But the elements of proof are different, are they not? In the sense that one says knowingly receive and one says knowingly possess. But maybe the government can't prove knowing receipt, but they can prove possession. And I would submit that the levels of proof is different than the severities of conduct. If sentencing is supposed to be tied to the degree of the offense, not to the degree of proof, especially when we have possession where you know the possession is either through receiving or producing the item. So I'd say levels of proof is different than the severities of the offense. In terms of the functional differences in the outcomes, I think it's significant that the Sentencing Commission has found that the average sentences are 30 months apart for these two offenses nationwide. In particular, the average sentence nationwide for a possession offense is 55 months. That's lower than the statutory minimum for a receipt offense, meaning by a prosecutorial decision to charge receipt rather than possession, the judge is prohibited from even reaching an average possession sentence, despite the fact that the conduct is identical in the mine run case. So I would submit that this is an arbitrariness problem, as I said, void for vagueness, because it is so standardless that it doesn't offer guidance to a prosecutor. What's, just because of the sentence, is that what you're saying? Because of. You're saying it's arbitrary simply because of the sentencing disparity. No, Your Honor, I would say that it's arbitrary because it's so standardless that it's. What's standardless about I think I can prove possession, but I don't think I can prove receipt, knowing receipt? The standard is how to look at the act that constitutes both and decide which to charge. You know, usually when we talk about vagueness, we talk about vague to the defendant. You're talking about vagueness to the prosecutor. That's what you just said. It's vague to the prosecutor, not to the defendant. And, Your Honor, I would submit that Colander is a good example that it's not just to the defendant. In Colander, they're talking about a statute that gave permission to the police to stop, and it was a crime if the person refused to give credible and reliable identification. That was struck down as void for vagueness because it didn't guide the police officers sufficiently, and it let them arbitrarily enforce the law. I don't think that the vagueness doctrine applies just to prosecutors, or to defendants, I'm sorry. But I would also note, as we do under our objection to the guideline, that under substantive due process, and I think Chapman that the government cites is a good example. To provide guidance to the police. This is not providing guidance to the prosecutor as to whether to receive or possess pornography, child pornography. But go ahead. And I would submit that substantive due process also applies, and I think the government's citation to Chapman is apt, where it's looking at a scheme for LSD punishments. And there, the weight was the determinative factor. And what they did with the weight is involve the carrier, the object, or the substance that carries the drug in the weight. And the argument is that's arbitrary. The Supreme Court ruled against the defendant, but I think it's instructive on two fronts. The first is, typically, if Congress affixes a punishment to a crime, that could be the maximum punishment. Unless the Supreme Court says it's based on an arbitrary distinction. There, it wasn't arbitrary, because the weight gets at the harm. This distinction is arbitrary because of what we've postulated in our factual premises. But then the second thing that the court did, the Supreme Court, in dismissing, denying the claim, is point out that the defendant had not presented any examples of an arbitrary array of sentences, only hypothesizing that in the future it might become arbitrary. And noting that even in those hypotheticals, the defendant wouldn't be affected. And so I think this is very different for both of those reasons. And I see I'm out of time. I've reserved five minutes. May it please the court, Eileen Wilson, on behalf of the government. The district court here properly denied Ross's motion to dismiss count one of the indictment. Can you answer the question that he couldn't answer from the record? Why the two different dates for this? These two different, I know one count is one date. One count's the other. I was struck by that. The first series that you mentioned, that was when the agent was on peer-to-peer and was, excuse me, Mr. Ross was sharing child pornography. That's what those first dates are and they represent the receipt count. The second date is when the agents went out and executed the warrant. The receipt counts apply to three different videos with children 11 and four years old. The possession counts relate to over 17,000 images of child pornography, over 500 videos, and several DVDs, which means, of course, that he would have had to have transferred child pornography onto the videos. He was in possession of that amount of child pornography when the search warrant was executed. As Judge Owen pointed out, sometimes the government cannot prove receipt. That's very helpful. On the second count, he's got all this stuff. If you wanted to prove receipt, what would you have to do? We would have to prove, we would have to have an agent online the new way. The old way, of course, would involve the post office, but that rarely happens. But an agent would be observing in the peer-to-peer network and there are a whole bunch of them, and they would be able to use the IP address and see that he is sharing, distributing, receiving, et cetera. And the agents are able to do that. And a lot of times, quite frankly, it's the forensics that drive these charging decisions. For example, here, there were some blocks put up, and criminals will often do that. And so you can't necessarily prove up the distribution or what have you because of the sophistication of the forensics that are going on. And we obviously have special people that go through these computers and what have you. And that's over my head, but I do know that forensics often drive it. Therefore, you might have possession, but maybe if you had been on a peer-to-peer and had caught the person, you would be able to prove receipt. And in that case, right, you would make a choice on that day. But that's not what happened here. Without the peer-to-peer, I get that. The peer-to-peer makes it, I guess, easier to prove receipt. But I mean, what I was thinking of is if you find stuff on the computer and then you want to prove receipt, you don't have the peer-to-peer aspect, what do you have to do? Do you have to sort of reconstruct for each file, like, how it came to be? Or is it... What I'm getting at, is it more difficult? That's my understanding because you have to prove that this person knowingly received child pornography on such-and-such date. That's our burden of proof. And sometimes we can't do that. And for example, if there are walls up on the peer-to-peer, maybe we can show somebody's receiving but not necessarily distributing. And so our burden of proof often drives, as I said before. And so what we proved up here, if you look at the rearrangement, were the three videos of the four-year-old, two four-year-olds, I believe it was, and an 11-year-old, but then the 1,700-plus images, the 500 videos and whatnot. And the Sixth, the Seventh and, to a certain extent, the Ninth Circuit have already addressed this issue and rejected it. The court has found that there is a difference between receipt and possession. Someone can possess without receiving. While it's true, someone who receives is possessing. But you have to make those charging decisions. And the Supreme Court and Batchelder and this court in numerous opinions have recognised that prosecutors have a certain amount of discretion and they're supposed to exercise it within constitutional restraints. And there's no evidence that anything was misabused here, of course. And the other thing is we have distinct harms threatened. For example, in possession, I realise that sometimes it is the child pornographer who's possessing. But sometimes somebody can possess and use that information to try to groom children. It's to say, look, you know, this is fun, why not do it? That type of thing. This court, many other courts have said, however, when you're receiving, when you're distributing, when you're doing those active type computer crimes, you're increasing the demand for child pornography. You're in the market and it's a much, much stronger situation. And as this court has said in some opinions, and I know other courts have as well, that a lot of these defendants want different kids. They want more. They want to see this child or what have you. Yes, we have the Amy series and what have you, but they want fresh faces. And that's one of the inherent problems in this peer-to-peer with receipt and distribution. So think of it as more of an active crime, whereas possession is a passive crime for lack of... I mean, I realise that it's still a bad thing to do. I understand the vagueness argument. We're not talking about a notice-type vagueness here, where somebody doesn't understand... We're not talking about arbitrariness in the prosecutor. So the key example here, as I understand the appellant's argument, is suppose you have conduct that the prosecutor looks at it and says, I could charge that as receipt, I could charge that as possession, and I could prove either one. So I'm totally left up to my own devices to decide which one to charge. What is your response to that? Does that create an arbitrariness problem? Absolutely not, and I think that's what Batchelder tells us. Batchelder says that you can... They had the gun, right? The felon could not have the gun. You had two statutes, and the prosecutor exercised its discretion. Batchelder also told us that if the prosecutor is influenced by the penalties, that alone does not establish a constitutional violation. There are checks and balances with the prosecutor. Right, if we could prove that the prosecutor was acting on the basis of race or some other... Correct. We're not talking about that. Right, there's not an, you know, a scintilla of evidence, if you will, in this situation. And if you take Ross's argument to the extreme, then you could never have a mandatory minimum. You could never have a mandatory minimum sentence where you have some type of overlap. And that's not the law, and that's not what Congress has directed. And, of course, sentencing power starts with Congress, right? I mean, they're the ones that pass the various statutes. They're sometimes involved with the Sentencing Commission. And here, there have been various opinions complaining about this disparity in child pornography guidelines, but Congress has done nothing. And the Smith opinion that they 28-J'd last week, the Smith opinion goes through that history of that. The judge ultimately says that while she may have... ..she may have some respect for that, she's still going to file the guidelines in 3553, and she wasn't going to not do that based on philosophical disagreements with Congress. But the reality is, in a lot of these discussions, what isn't mentioned is the violence against children. These are violent crimes. They're often with babies, bondage, rape, toddlers, and that's often missing from this discussion. And another example that I gave in my brief, obviously a little bit more sanitized, is where somebody... ..a case where somebody shoots somebody. Reckless gun, manslaughter, murder. The prosecutors make these decisions all day long. Drug quantities would be another example. Excuse me? Drug quantities. Absolutely. And there's even fraud cases. The list goes on and on. And they make these decisions, and, for one thing, I like to think that most of us would do that, trying to uphold justice, and not for some personal spoiler or whatever that some of these cases state. I mean, there's no evidence of that. And the courts that have looked at this, the Sixth, the Seventh, the Ninth, they do find that there is a significant difference in these crimes. At first blush, maybe they don't look like it, but when you dig a little further, you can see that. They are significantly different. And if we were to charge, for example, somebody with just receipt, and maybe they only had two videos, that might have a totally different effect on a judge when we see that he's in possession, actually, though, of 17,000 images. And here, the judge, the district court judge, complained about the guidelines, as some people do, but what he did is he didn't elect to go to the mandatory minimum of five years. Instead, he looked at the defendant who was standing in front of him with all these images, who said that he used to touch children and then go into the women, I mean, excuse me, the bathroom and what have you, and he sentenced him, initially, 110 months, which is almost double of that mandatory minimum. So even though he was saying that he didn't agree with this, he did what he was supposed to under Booker and under 3553A. Now, I realize he gave him a 23-month credit, but my point is he started at 120, excuse me, 110 months. And I think that's important to bear in mind, too, because as the Smith, the 28J judge said, and Smith, as this district court did, nobody knows better than a district court what a defendant actually has done. They've read the pre-sentencing report and all that type of thing, and they have to weigh those decisions. And we all know that district court judges do the best they can in sentencing. And it's a very difficult thing to do, but I think it's very important, as I said before, that we bear that in mind. And to the extent there's a problem here with the statute of the guidelines, that rests with the Sentencing Commission or Congress, that's their roles. It's their roles, to the extent they think something is wrong, to change it. And as Smith pointed out, what Congress has done instead has continued to increase these penalties. And so, this is what we have. But again, as I said just a moment ago, at the end of the day, the district court makes the decision. I realize the court is hampered, or whatever you want to call it, by the mandatory minimum, but the court does have the opportunity to go downward, and that's what the court did here. The court didn't sentence him anywhere near what he could have. And of course, he's not challenging his sentence. So, I think I've pretty much covered everything, so unless the court has any further questions, I'll yield the remainder of my time. Thank you. Your Honors, I want to address a couple of points that just came up. The first is the comparison to drugs and other scenarios where there's mandatory minimums. As I mentioned earlier, there's some differences, but one that I think needs to be pointed out is that in all of those cases, the guidelines are still tethered to the real world conduct. For drugs, the base level is set by the weight of drugs, not the offense. For fraud, the guideline is set on the amount of fraud, not the offense. There is no plea bargaining to change the guideline level. There is no prosecutorial charging decision that changes the level the way there is here. And that's significant. I want to just briefly mention that in Booker, in the part where the court rejected a jury trial requirement, it did so for five reasons, but two of them are very germane to this issue. The first is that the Supreme Court said that Congress's basic goal with the Sentencing Reform Act is uniformity that does not consist simply of similar sentences for those convicted of violations of the same statute. More importantly, it would be a uniformity that is consistent between sentences and real conduct. The second is that that same court gave another reason, saying that such a system, where the prosecutor chose which facts to allege and it had to be proven to a jury before the judge could consider it, would have particularly troubling consequences with respect to prosecutorial power. Different cause, but we have those same two effects from this system. The prosecutorial choice dictates what the district court's guidelines are. And had Mr. Ross challenged substantive reasonableness on appeal to this court, as it stands, this court, by precedent, would have to presume reasonable 151 to 188. Any sentence within there is presumptively reasonable. Had the prosecutor simply filed the other charge, this court would have been required to treat as presumptively reasonable a sentence that's 54 to 67 months lower. This arbitrary discretion permeates the entire process from indictment through appeal. That is a problem that is distinct that does not exist for drugs and fraud, where the judge does what the Sentencing Reform Act puts in his hands or her hands, evaluate defender and the offense. Here, the guideline is set by the prosecutorial decision, and then the judge has to move from there. I will also correct what maybe I misheard, but in Smith, the district court did vary, didn't say these guidelines are appropriate. And this is at Penn site 6 in the opinion 28 Jade. The court said, this court finds that this case falls into the category of cases where it's difficult to discern why the defendant should be sentenced under receipt rather than possession. And near the end, the court struggles to see why the large quantities possessed in and of itself supports the significant disparity in the guidelines range. And the final sentence in Smith was 78 months, half the guidelines. And then beyond that, in terms of this being a 110-month sentence in Mr. Ross's case, and that that is not to the mandatory minimum, and it is below the guidelines, this court in Hernandez-Montes remanded. Even though in that case, the court had imposed, the district court had imposed a sentence, I believe it was 48 months, and the guidelines were 70 to 87. This court had no problem remanding and saying, even though it was a variance below the guidelines, this is still error and needs to go back to the district court. The Supreme Court did the same in Duenas-Alvarez. I will note that I didn't get to say it in opening, but I think the dissent in the Barra decision is important, where two justices dissented, saying that the court sui sponte, despite the fact that the issue was never raised at any level of the proceeding, should take up the issue on its own and strike down a system that would allow this degree of control to pick felony or misdemeanor based on the same action. That was even though it wasn't briefed, argued, never existed in the record. They were so offended by how that would implicate our system of justice that it should be dealt with. I think it's incredibly significant here that there is no standard telling the prosecutor how to choose between these in the Meinran case, in Mr. Ross's case as applied, and then that controls the guidelines that affect the district judge, but also this court. I think that this court could deny our challenge as to the statute and agree with us as to the guideline, that it is impermissible, arbitrary, and a separation of powers violation for the prosecutor to have that much control over the guideline process. That is. I understood you conceded that your guideline challenge was foreclosed in part. In part. And I think Beckles and Godoy say a void for vagueness challenge is. So what are you arguing? Substantive due process? That's what you're arguing? That's right. And I think in Beckles, the court explicitly says they are not foreclosing due process challenges. And so that's what we're attempting to do. Did it say substantive due process or just due process? It said due process under the Fifth Amendment. And I see my time is up.